# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| MALISSA MARIE WADE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CAUSE NO. 3:14-CV-1422-PPS |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Malissa Wade appeals the Social Security Administration's decision to deny her application for Supplemental Security Income (SSI). An administrative law judge found that Wade was not disabled within the meaning of the Social Security Act. As explained in detail below, I find that the ALJ improperly ignored evidence in the record regarding the severity of Wade's allergies and will therefore remand this matter to the ALJ to fully and properly develop the administrative record on that issue.

## BACKGROUND

Those looking for a detailed discussion of Wade's medical records are directed to the extensive summaries in the ALJ's decision (R. 10-20) and in Wade's opening brief. (DE 10 at 1-15). Rather than simply reiterating those summaries, I will give a brief overview of Wade's history of health issues and touch on those issues that are most important to this decision.

Wade is a divorced mother of three in her mid-thirties. She has a rather thin

resume. Wade worked a few clerical jobs in the 1990's while attending school, including spells as a pharmacy technician and gas station clerk. (R. 169). But, she left the workforce around 2000 to raise her children. (R. 34). In May 2009, Wade began working again, starting a job as a temporary clerk at an office. (R. 33). Unfortunately, she only lasted five weeks. Wade's allergies flared up dramatically, culminating in two emergency room visits in two weeks. (R. 518). After the second visit, her allergist, Dr. James Harris, ordered her to stop working. *Id.* She has not worked since.

Wade has asthma and has been diagnosed with post-traumatic stress disorder, but her main problem is allergies. Wade has an astonishing range of food, drug, and environmental allergies. These include common ones like latex, pollen, cats, dairy, and wheat. (R. 633-634). But she also has not-so common ones like allergies to sunlight, sawdust, ozone, green beans, and caffeine. *Id.* The complete list of Wade's allergies is several pages long. (R. 633-635). The environmental allergies are particularly important. That's because Wade is allergic to common substances, like dust, perfume, deodorant, and hair spray that she could expect to encounter in an average workplace. *Id.*

Wade's allergies are not life-threatening, but they are severe enough to significantly impact her daily life. She suffers from chronic congestion and eye inflammation. (R. 242-245, 503). And her allergies frequently cause severe headaches, joint pain, swelling, respiratory problems, dizziness, and hives. (R. 242, 429, 518, 578-582). As a result, Wade has had to restrict her activities. She rarely leaves the house, except for the occasional trip to the grocery store. (R. 40-42). She can never go to

2

restaurants and only eats four or five specific foods. (R. 51-52). Her children have to do many of the chores around the house. And Wade has to go outside when they dust or do intensive cleaning. (R. 39, 54-55).

To help control her symptoms, Wade takes the steroid Celestone. (R. 242, 245, 479, 510, 520). This usually takes the form of a monthly injection, but, when her allergies flare up, she has had to inject herself as much as once a week. (R. 479, 577, 581). Her allergist, Dr. Harris, has expressed concern about the long-term effect of chronic steroid use, but, so far, has not been able to find another effective treatment. (R. 244).

Wade applied for SSI on August 8, 2011, alleging an onset date of January 1, 1995. The claim was denied initially on October 20, 2011, and then again upon reconsideration on January 12, 2012. Subsequently, Wade filed a written request for a hearing, which was held on January 16, 2013. At the hearing Wade, through her attorney, amended her alleged onset date of disability to August 8, 2011. Wade testified at the hearing, as did a vocational expert. (R. 26-68.)

The ALJ issued a decision denying benefits. (R. 10-20). At Step One, the ALJ found that Wade met the insured status requirements of the Social Security Act, and that she has not engaged in substantial gainful activity since August 8, 2011, the amended alleged onset date. At Step Two, the ALJ concluded that Wade had severe impairments, namely asthma, chronic allergies, and post-traumatic stress disorder. The ALJ also found Wade's shingles and foot pain to be non-severe impairments.

At Step Three, the ALJ concluded that Wade does not have an impairment or

combination of impairments meeting or medically equaling one of the listed impairments. At Step Four, the ALJ found that Wade had the capacity for medium work, but with some limitations. Most importantly, the ALJ found Wade cannot tolerate exposure to extreme temperatures, environmental irritants or workplace hazards.

At Step Five, the ALJ found that Wade could not perform any past relevant work but that there was a sufficiently significant number of jobs in the national economy that she could perform.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Wade timely sought review of that decision by filing this case.

## DISCUSSION

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* The question before me is not whether or not Wade is disabled, but whether there is substantial evidence in the record supporting the ALJ's decision of not disabled. *Books v. Chater*, 91 F.3d 972, 977 (7th Cir. 1996). In other words, the ALJ's decision, if supported by substantial evidence and reached under the correct legal standard, will be upheld even if reasonable minds could differ as to the appropriate conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). It is not my job to re-weigh evidence, choose among conflicting versions of

4

events, decide questions of credibility, or substitute my own judgment for the ALJ's. *Young*, 362 F.3d at 1001.

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant is deemed to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to do her previous work but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Wade objects to the ALJ's decision on three grounds: (1) the ALJ erred by ignoring the opinion of her treating physician, Dr. James Harris, (2) the ALJ erred in determining Wade's mental RFC; and (3) the ALJ's credibility determination was improper. The first of these is the most persuasive and requires remand, so that is where I will focus my attention.

Wade's argument turns on a June 18, 2009, "To Whom it May Concern" letter from Dr. James Harris. Harris is an allergist who has treated Wade since 2005. In June 2009, Wade had just started working as a temporary clerk. In the letter, Harris stated that Wade's job had aggravated her "extreme environmental allergies." (R. 518). He

5

noted that Wade suffered from "generalized swelling, daily GI symptoms, difficulty breathing" and had had two emergency room visits in two weeks. *Id.* Harris wrote that he had initiated aggressive steroid therapy, but it was not helping. *Id.* As a result, he ordered Wade to "stop work immediately" until her allergies came under better control. *Id*.

The ALJ did not address Harris's letter in his opinion. This was an error. Although the ALJ need not discuss every piece of evidence in the record, she must confront the evidence that does not support her conclusion and explain why it was rejected. *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (quotations omitted). Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision results upon substantial evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (holding remand was necessary when the ALJ ignored important evidence).

The Harris letter cuts against the ALJ's conclusion that Wade was not disabled. Recall that the ALJ determined that Wade was able to work so long as she was not exposed to environmental irritants like fumes, odors, gases, and raw chemicals. (R. 65-66). As the vocational expert testified, this means that while Wade couldn't work at, say, a laundry, she could pack boxes in a warehouse. (R. 65-66). If the Harris letter is believed, however, Wade is more limited than the ALJ accounted for. If a couple of weeks in an ordinary office sent Wade's health into a tailspin, then a limitation on exposure to environmental irritants would likely not be sufficient to protect Wade from a severe allergic reaction.

6

Now, there might be legitimate reasons for discounting Harris's opinion. For example, the ALJ could believe that Harris was exaggerating the severity of Wade's condition or that Harris's conclusions were not supported by the medical record. *See Gildon v. Astrue*, 260 Fed. App'x 927, 929 (7th Cir. 2008) ("[a]n ALJ is not required to accept a doctor's opinion if it is brief, conclusory, and inadequately supported by clinical findings"). Or the ALJ could have thought that Wade's allergies had improved since the 2009 letter. The government has seized on this last reason. They argue that the ALJ did not need to address Harris's letter because it was written two years before the alleged onset date and so did not shed any light on Wade's condition at the time of the ALJ's evaluation.

This is mistaken for two reasons. First, the medical evidence suggests that, if anything, Wade's allergies have gotten worse since 2009. Harris's treatment notes reflect no progress. He consistently states that Wade's allergies are inadequately, or poorly, controlled. (R. 244, 512, 581, 584). Moreover, since 2009, Wade has developed a new symptom, an allergy-related eye problem. (R. 242, 479, 503, 582). And she has gone from needing steroids once a month to once a week (R. 577-584). So the evidence suggests that the situation described by Dr. Harris in 2009 still obtains.

Second, if the ALJ believed Harris's 2009 letter was outdated, she needed to say so. An ALJ must articulate her analysis in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Further, an ALJ must build an

accurate logical bridge from the evidence to the conclusion so that the reviewing court can assess the validity of the agency's finding and afford a claimant meaningful judicial review. *Id.*; *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Since the ALJ did not address Harris's letter, I cannot tell whether she considered it. This is a problem for two reasons. If the ALJ did not consider Harris's letter, that was an error as the letter is important evidence that undercuts the ALJ's decision. If she considered and rejected it, I don't know her reasons for doing so and so can't determine whether those reasons are valid. Either way, I cannot determine whether the ALJ's decision rests on substantial evidence, so remand is necessary.

## CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: March 10, 2015

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT